# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 4:17-CR-0042 |
| v. | (Judge Brann) |
| JOLENE MARIE EDWARDS, | |
| Defendant. | |

## MEMORANDUM OPINION AND ORDER

### February 12, 2018

**BACKGROUND**

The United States of America indicted Defendant Jolene Marie Edwards on March 23, 2017 on three counts of bank fraud; a count of theft, embezzlement and misapplication by a bank employee; and three counts of interstate transportation of stolen property. Trial was continued at the request of the Defendant several times, and a date certain jury trial has now been fixed for February 12, 2018.

On Friday, February 9, 2018, at 9:00 a.m., the Government disclosed to Defendant the Jencks Act, *Brady*,[1] and *Giglio*[2] materials in its possession. After reviewing these materials, Defendant filed a "Motion to Dismiss the Indictment

---

[1] *Brady v. Maryland*, 373 U.S. 83 (1963).

[2] *Giglio v. United States,* 405 U.S. 150 (1972).

Based on False Statements to the Grand Jury that Substantially Influenced its Decision to Indict Edwards."[3]

Defendant Edwards asserts that the Federal Bureau of Investigation Special Agent (hereinafter "FBI agent") assigned to the case "provided perjured testimony that substantially influenced the grand jury's decision to indict." She asserts that the FBI agent committed perjury because he testified before the grand jury that Defendant Edwards used a Power of Attorney to close a Certificate of Deposit (hereinafter "CD") belonging to the alleged victim, Anthony Arduini (hereinafter "Arduini") at Jersey Shore State Bank (hereinafter "JSSB"); Defendant Edwards was then employed as Assistant Branch Manager at JSSB. Defendant Edwards asserts that "Anthony Arduini withdrew funds in person at Jersey Shore State Bank and he himself executed withdrawal forms to withdraw from his Certificate of Deposit." Defendant Edwards further argues that the FBI agent's "false/perjured testimony under oath substantially influenced the grand jury's decision to indict Jolene Edwards or at least, there is 'grave doubt' that the decision to indict was free from the substantial influence of [the FBI agent's] testimony." Most pertinently, Defendant Edwards argues that "the grand jury would not have returned the indictment but for the FBI agent's testimony that Ms. Edwards used the Power of Attorney to obtain the money which 'bypassed the customer.'"

---

[3] ECF No. 87.

The Government asserts in response that "that portion of the agent's testimony could not have influenced the grand jury's decision to indict Edwards, in view of the substantial other evidence reported to the grand jury concerning her fraudulent conduct." The Government also asserts that there is "substantial evidence of [Edwards's] fraudulent actions with respect to the customer's certificate of deposit." The United States presented other evidence to the grand jury, other than the alleged misstatement by the FBI agent that Defendant Edwards closed the CD, as opposed to the victim, Arduini, closing the CD. Specifically, the Government presented the grand jury with the following additional information:

- Edwards' fraudulent offer to the depositor that she put the CD in a new CD in her name at M&T Bank, when in fact she put the funds in a checking account at M&T Bank in her name and transferred the funds to pay $45,947 on her personal credit card accounts and transferred the remaining $6,000 to her husband's retirement account. Ex 1, 6-8; 12.

- The timing of the power of attorney prepared in or around July 11, 2012, shortly before the initial withdrawal of $6,000 from the certificate of deposit. Ex. 1, 8; 16.

- Edwards' admission during the FBI interview that she used $6,000 in CD funds to repay a loan from her husband's retirement account at Vanguard, as reflected in related bank records. Ex. 1, 8-10.

- A summary of transactions by Edwards conducted in August-September 2012 using the M&T Bank checking account that she opened to deposit $46,000 in CD proceeds and the transfer of those funds to make payments to her credit card account, including accounts with Cabela's, Victoria's Secrets, Old Navy, and Kohl's. Ex. 11-14.

- The lack of any consent or authorization by the depositor for Edwards to use the CD proceeds to pay off her personal debts. Ex. 14-15.

- The depositor's requests for the CD funds in November 2014, and Edwards' excuses for why she could not return the CD proceeds despite her fraudulent representation that she had put the proceeds into a CD at M&T Bank. Ex. 1, 16-19.

- Loans that Edwards admitted taking from two other bank customers to pay back the depositor in 2014 because she had spent all the proceeds from the certificate of deposit. Ex. 1, 20; 22-23.

- Edward's false statements to bank management in 2014 that she was holding the $52,000 CD proceeds, in cash, for the depositor in a safe at her residence, when in fact she had spent all the money paying off her personal debts. Ex. 1, 18-19.

- The FBI interview of Edwards in which she initially falsely claimed to have kept the $52,000 CD proceeds at her house, but eventually admitted that she had put the funds into her M&T checking account and spent it all. Ex. 20-26; 21-22.

- Edward's statements during the FBI interview that the bank's president had asked her about the power of attorney and that he became upset that she had power of attorney and told her to revoke it, because it was inappropriate for bank employees to have powers of attorneys with bank customers. Ex. 1, 24-25.[4]

The gravamen of motion to dismiss an indictment is whether the Defendant was prejudiced by actual misconduct.[5] I cannot dismiss an indictment merely due

---

[4] ECF No. 96 at 3-5.

[5] *See Bank of Nova Scotia v. United States,* 487 U.S. 250 (1988) (Kennedy, J.).

to 'harmless error.' Justice Anthony M. Kennedy, writing for the United States Supreme Court wrote in *Bank of Nova Scotia v. United States*, as follows:

> We now hold that a federal court may not invoke supervisory power to circumvent the harmless-error inquiry prescribed by Federal Rule of Criminal Procedure 52(a). Rule 52(a) provides that "[a]ny error, defect, irregularity or variance which does not affect substantial rights shall be disregarded." The Rule was promulgated pursuant to 18 U.S.C. § 687 (1946 ed.) (currently codified, as amended, at 18 U.S.C. § 3771), which invested us with authority "to prescribe, from time to time, rules of pleading, practice, and procedure with respect to any or all proceedings prior to and including verdict...." Like its present-day successor, § 687 provided that after a Rule became effective "all laws in conflict therewith shall be of no further force and effect." It follows that Rule 52 is, in every pertinent respect, as binding as any statute duly enacted by Congress, and federal courts have no more discretion to disregard the Rule's mandate than they do to disregard constitutional or statutory provisions. The balance struck by the Rule between societal costs and the rights of the accused may not casually be overlooked "because a court has elected to analyze the question under the supervisory power." *United States v. Payner, supra*, at 736, 100 S.Ct., at 2446–2447.
>
> Our conclusion that a district court exceeds its powers in dismissing an indictment for prosecutorial misconduct not prejudicial to the defendant is supported by other decisions of this Court. In *United States v. Mechanik*, 475 U.S. 66, 106 S.Ct. 938, 89 L.Ed.2d 50 (1986), we held that there is "no reason not to apply [Rule 52(a) ] to 'errors, defects, irregularities, or variances' occurring before a grand jury just as we have applied it to such error occurring in the criminal trial itself." Id., at 71–72, 106 S.Ct., at 942. In *United States v. Hasting*, 461 U.S., at 506, 103 S.Ct., at 1979,
>
> It would be inappropriate to devise a rule permitting federal courts to deal more sternly with nonconstitutional harmless errors than with constitutional errors that are likewise harmless.
>
> Having concluded that our customary harmless-error inquiry is applicable where, as in the cases before us, a court is asked to dismiss

- 5 -

an indictment prior to the conclusion of the trial, we turn to the standard of prejudice that courts should apply in assessing such claims. We adopt for this purpose, at least where dismissal is sought for nonconstitutional error, the standard articulated by Justice O'CONNOR in her concurring opinion in *United States v. Mechanik*, supra. Under this standard, dismissal of the indictment is appropriate only "if it is established that the violation substantially influenced the grand jury's decision to indict," or if there is "grave doubt" that the decision to indict was free from the substantial influence of such violations. *United States v. Mechanik*, supra, at 78, 106 S.Ct., at 945–946. [6]

The Supreme Court's actual prejudice standard has been expounded upon in this Circuit. The United States Court of Appeals for the Third Circuit, in a matter substantially similar to this one, found that the District Court erred in dismissing an indictment against a defendant based on the FBI agent's having paraphrased the words "dope" and "cocaine" instead of precisely quoting the defendant's lexes for the drugs. In the matter of *United States v. Soberon*,[7] an FBI agent admitted during the trial of the defendant there that the defendant "had not uttered the precise words 'dope' or 'cocaine.'"[8] The defendant moved to dismiss the indictment arguing that that FBI agent had committed perjury amounting to prosecutorial misconduct that warranted dismissal of the indictment.[9] An indictment cannot be dismissed without the Court having made making a factual finding that the

---

[6] *Bank of Nova Scotia*, at 254-56.

[7] 929 F.2d 935 (3d Cir. 1991) (Cowen, J.).

[8] *Id* at 938.

[9] *Id.*

defendant was prejudiced by misconduct before the grand jury.[10] "To find prejudice, the district court must establish that 'the violation substantially influenced the grand jury's decision to indict,' or ... there is 'grave doubt' that the decision to indict was free from the substantial influence of such violations."[11]

The Honorable Robert E. Cowen, wrote in *Soberon*:

> We hold that the presentation of the allegedly perjured testimony to the grand jury does not fall into the narrow category of cases in which dismissal of charges without a showing of prejudice is warranted. According to *Bank of Nova Scotia*, the requirement of prejudice is excused only in extreme cases, where the "structural protections of the grand jury" have been compromised and remedies other than dismissal would be impractical. *Id*. at 257, 108 S.Ct. at 2375. The only instances in which the Supreme Court has recognized this exception to the harmless error rule have involved grand juries selected in a discriminatory manner, which tainted the fact finding process itself. *See, e.g., Vasquez v. Hillery*, 474 U.S. 254, 260-64, 106 S.Ct. 617, 621-24, 88 L.Ed.2d 598 (1986) (dismissal of indictment mandated by racial discrimination in selection of grand jurors); *Ballard v. United States*, 329 U.S. 187, 195, 67 S.Ct. 261, 265, 91 L.Ed. 181 (1946) (dismissal of indictment because women were excluded from grand jury). The purported error here does not rise to this level. Accordingly, the district court erred in dismissing Count 1 against a defendant who had not been prejudiced.[12]

"Perjury is defined as knowingly making a false, material declaration under oath."[13] Accepting for the sake of the instant motion the Defendant's argument,

---

[10] *Id.* at 938 *citing Bank of Nova Scotia,* at 250.

[11] *Soberon*, 929 F.2d at 939–40, *citing Bank of Nova Scotia*, 487 U.S. at 256, *quoting United States v. Mechanik*, 475 U.S. 66, 78, (1986).

[12] *Soberon*, at 940.

[13] *Id, and see* 18 U.S.C.A. § 1623 (1984).

which may be correct based on my review of the Government's exhibits[14] that it was Arduini who closed the JSSB CD, and not Edwards via the power of attorney, I do not find that the FBI agent's statement constituted perjury, or a knowing misstatement; it was merely a mistake. This appears to be "imagined perjury."[15]

Moreover, the grand jury was presented with evidence other than just the mistaken statement that Jolene Edwards used a Power of Attorney to obtain the funds of Arduni's JSSB CD. The Government presented evidence to the grand jury that Edwards told Arduini that the money had been deposited at M&T Bank, when it had instead been used to pay off her personal debts; the timing of the Power of Attorney; the lack of consent of Arduini for Edwards to use his funds to pay off her personal debts; Arduini's requests for the return of his funds; loans Edwards took from other bank customers to pay back Arduini; and false statements to her supervisors that she was holding the $52,000 CD proceeds in cash in her home.

However, Defendant Edwards's arguments are not for naught. Edwards's arguments all go to the sufficiency of the evidence. The first element of bank fraud will require the Government to prove that Edwards "knowingly executed a scheme or artifice to defraud Jersey Shore State Bank by knowingly executing a

---

[14] Defendant has not yet submitted her exhibits to the Court.

[15] *Soberson*, at 941.

scheme to obtain the money, funds or other property owned by or under the control of Jersey Shore State Bank by means of material false or fraudulent pretenses, representations or promises." Similarly, the third element of willful misapplication of bank funds will require the Government to prove that Edwards "Edwards embezzled or willfully misapplied the moneys, funds, assets, securities, or credits entrusted to the custody or care of Jersey Shore State Bank." Her arguments, although they fail as a matter of law before the Court as a basis to dismiss the indictment, may well raise reasonable doubt in the minds of the jury.

**AND NOW**, for the foregoing reasons, **IT IS HEREBY ORDERED** that Defendant's "Motion to Dismiss the Indictment Based on False Statements to the Grand Jury that Substantially Influenced its Decision to Indict Edwards," February 9, 2018, ECF No. 87, is **DENIED**.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
United States District Judge