IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** | : 4:17-CR-00042 |
| | : |
| v. | : (Judge Brann) |
| | : |
| **JOLENE MARIE EDWARDS** | : (Electronically Filed) |

**JOLENE EDWARDS' SENTENCING MEMORANDUM
IN SUPPORT OF A SENTENCE OF ONE DAY**

**BACKGROUND**

Jolene Edwards is a 39 year old first time offender with an otherwise unblemished record and a reputation among co-workers, customers, family members, friends, and neighbors as a kind, selfless, warm, caring, dependable, family oriented person strong in her faith who graciously helps those in need.

This case stems from Jolene's kindness and caring. From 2010 to 2014, she helped care for Mary Arduini (Miss Mary), who suffered from breast cancer and who lived with her son, Tony Arduini, a sports memorabilia collector and hoarder. Tony Arduini's house is filled with boxes, floor to ceiling and wall to wall, of his various collections and papers. When Jolene encountered the conditions under which Miss Mary and Mr. Arduini were living, she instantly started helping them.[1]

---

[1] The details of how Jolene helped are set forth in Jolene Edwards' Statement of Facts attached to the Presentence Report.

Mr. Arduini was extremely grateful to Jolene for her assistance and commitment to his mother. He gave Jolene and her children gifts for their birthdays and for Thanksgiving, Christmas and Easter. In 2011, Mr. Arduini made Jolene the beneficiary of his assets, including an annuity worth $93,000. In 2012, Mr. Arduini executed a Last Will and Testament naming Ms. Edwards the beneficiary of all of his assets, a Power of Attorney naming Ms. Edwards as his sole agent, and an Advance Directive For Health Care naming Ms. Edwards as his surrogate. Mr. Arduini consistently and regularly told Jolene Edwards he wanted her to have everything.

Against the backdrop of Mr. Arduini repeatedly telling Jolene he wanted her to have everything and everything would be hers, Ms. Edwards used the proceeds of a $52,000 Certificate of Deposit (CD) Mr. Arduini closed in 2012, which he gave Ms. Edwards, to pay family debts and expenses rather than to open a CD in her name. Mr. Arduini wanted Ms. Edwards to hold the money for him in a CD in her name. There was no written document memorializing this arrangement. Ms. Edwards did not advise her employer, the Jersey Shore State Bank, that Mr. Arduini gave her $52,000 to hold for him in her name.

In November, 2014, Mr. Arduini's niece, Lorie Litzinger, learned that Jolene Edwards was the beneficiary of Mr. Arduini's assets and that he had given Jolene the proceeds of his CD. Lorie Litzinger thereafter made numerous inquiries of JSSB about Mr. Arduini's accounts. When Jolene's JSSB supervisor talked to her about the

proceeds of the $52,000 CD, Jolene falsely said she had the money at home and could pay it back. She lied about having the money at home to try to save her job and her banking career of 18 years.[2] On December 2, 2014, after borrowing money, Jolene Edwards gave Tony Arduini the $52,000.

On April 10, 2015, Jolene Edwards was forced to resign from JSSB because of her lies about the source of the $52,000 she gave to Anthony Arduini on December 2, 2014. Notwithstanding excellent performance evaluations, she also lost her job in food services at her children's school when the indictment against her became public.

On February 16, 2018, more than three years after Jolene Edwards returned Mr. Arduini's $52,000 to him she was found guilty by jury of embezzlement and misapplication by a bank employee and interstate transportation of stolen property. At sentencing, Jolene's offense behavior should be viewed in the context of the unusual circumstances of this case and of her entire life. As the several letters to this Honorable Court from business associates, family members, neighbors, congregants in her church and her Pastor attest, Jolene Edwards is a hardworking, dependable and caring woman who has earned a fine reputation in the community. (Letters attached as Exhibit "A"). Her lifetime of hard work and caregiving should not be overshadowed by the error in judgment which brings her before this Court.

---

[2] Jolene Edwards lied to FBI Agents on March 17, 2015, consistent with what she told her supervisor at JSSB and again on April 10, 2015 when she met with JSSB Senior Staff.

3

# **CONSIDERATION OF THE SECTION 3553(a) SENTCING FACTORS SUPPORT A SENTENCE OF ONE HOUR OR ONE DAY IN THE MARSHAL'S KEEP[3]**

The nature and unusual circumstances of this offense are detailed above in Jolene Edwards' Statement of Facts attached to the presentence report. In a nutshell, Mr. Arduini gave Jolene Edwards $52,000 to hold for him and she spent it. When Mr. Arduini asked for the money back, she borrowed money from friends and gave it to him. And she lied when she told her employer and the FBI that she had the money at her house.

There is no restitution issue in this case because Jolene Edwards made Mr. Arduini whole before the FBI even began its investigation and before detection of the criminal offense.[4] In essence, Ms. Edwards made pre-offense restitution, which is a significant mitigating factor in support of the requested variance from the guideline range of 8-14 months. (PSR ¶ 47).

---

[3] Because Ms. Edwards has been found guilty of a Class B felony, she may not be sentenced to a probationary sentence. 18 U.S.C. § 3561(a)(1). However, a sentence of one hour or one day in the Marshall's keep, followed by a term of supervised release may be imposed.

[4] The draft version of the presentence report assessed no loss because Edwards returned the full amount before the offense was detected, USSG § 2B1.1, comment. (n. 3(E)(i)), resulting in a guideline range of 0-6 months. The final version assessed loss on the theory that Edwards knew or reasonably should have known that the offense was about to be detected by a victim or government agency. However, arguably no loss should be assessed because Edwards wasn't concerned about detection of a criminal "offense." Instead, she was concerned about her job. She lied about where the money was to save her job, not to avoid criminal prosecution. The FBI had not begun its investigation; therefore, the offense was not about to be detected by a government agency.

Concerning the history and characteristics of the defendant, this case represents totally aberrant behavior from Edwards' previous life.  Aberrant behavior has long been considered a mitigating factor in support of a variance.  *See U.S. v. Howe,* 543 F.3d 128 (3rd Cir. 2008)(defendant convicted of mail fraud with a loss of $150,000 and guidelines of 18-24 months sentenced to probation in part because the offense was an isolated mistake in the context of the defendant's entire life even though the cover up lasted two years.)

Ms. Edwards has a history of hard work in the banking industry and in her mother's restaurant.  She is revered by her former colleagues and customers as is evident from the letters submitted to this Honorable Court. Her colleagues said the following, *inter alia*:

> "She was located in the office next to me and customers would come thru that door and look to her for help." (Exhibit "A" at 8).

> "She was known to go out of her way to assist customers at the Bank." (*Id.* at 1).

> "Her attitude toward helping customers and her continued patience with even the most simplistic things, such as helping someone that was older to balance their check book registry and reconcile statements, was the true meaning of service." (*Id.* at 3).

> "She also took the time, periodically, just to check in with her co-workers that she did not work one-on-one with, just to see how things were going for them. (*Id.* at 6).

"As a colleague, anytime Jolene and I had interactions it was always in a professional and ethical manner. She always went out of her way to help a client/customer in a manner that was proper for their needs." (*Id.* at 6).

"She has worked hard all her adult life, for me when I had the Village Café in Woolrich, and for Jersey Shore State Bank." (*Id.* at 14).

Similarly, Ms. Edwards' friends and neighbors hold her in high regard. She is considered an upstanding member of the community and never turns away a friend or neighbor in need. (*Id.* at 17). The children in the neighborhood call her "momma jo-jo." (*Id.*). She is loyal, dependable trustworthy, and very caring. (Id. at 18-22). When they learned of her criminal charges, they were shocked. (*Id.* at 17, 20).

Ms. Edward's family share the views of her friends and neighbors. (*Id.* at 11-16). Her sister, 20 years her senior said,

"Jolene is the most helpful person I know. She would do anything for anyone. She really enjoys helping others. All the little kids just love her" (*Id.* at 16).

Jolene has a strong sense of family and faith which is recognized by colleagues, friends, neighbors and family alike. (*Id.* at 2, 9, 11, 12, 13, 15, 17, 19, 21, 22). The impact of a term of incarceration would not only be devastating to Jolene's children but also to the other children in the neighborhood.

That this case represents aberrant behavior by Jolene Edwards is evident from the noteworthy support she enjoys from all walks of her life and further supports a variance from the advisory guideline range.

With respect to the need for the sentence to reflect the seriousness of the offense, we submit that the offense level determined under the guidelines overstates the gravity of the offense suggesting that a variance from it is warranted. *See*, USSG § 2B1.1, comment. (n. 20(C)). Because the offense level almost singularly focuses on the mechanical application of loss amount, it is not sensitive to personal culpability. Here, the offense level fails to consider the decisions by Mr. Arduini to designate Jolene as the beneficiary of all of his assets, the four years of care and love Jolene gave to Miss Mary, and the full restitution made well before Jolene was charged with criminal activity and before the start of any government investigation.

Moreover, in its enabling legislation, Congress directed the Sentencing Commission to consider seriousness of the offense to "insure that the guidelines reflect the general appropriateness of imposing a sentence other than imprisonment in cases in which the defendant is a first offender who has not been convicted of a crime of violence or an otherwise serious offense…." 28 U.S.C. 994(j). Recently, on April 14, 2018, the Sentencing Commission voted to propose an amendment to Congress to add a new application note to USSG § 5C1.1, effective November 1, 2018, providing that if the defendant is a nonviolent first offender and the applicable guideline range is in Zone A or B of the Sentencing Table, the court should consider imposing a sentence other than imprisonment where the defendant is "a nonviolent first offender who has no prior convictions or other comparable judicial dispositions of any kind

7

and who did not use violence or credible threats of violence or possess a firearm or other dangerous weapon in connection with the offense of conviction." Found at https://www.ussc.gov/sites/default/files/pdf/amendment-process/reader-friendly-amendments/20180412_prelim_rf_final.pdf. Thus, the Sentencing Commission is suggesting a defendant with guidelines in Zone A or B and who meets the definition of a first time offender has not committed an "otherwise serious offense." The guideline range in this case of 8-14 months is in Zone B of the Sentencing Table and Ms. Edwards meets the definition of nonviolent first offender in the proposed application note. Therefore, a sentence of one hour or one day in the U.S. Marshal's keep is a reasonable one under all the circumstances of this case and takes into account the seriousness of the offense

Concerning promoting respect for the law and just punishment, ". . . it is not *severe* punishment that promotes respect for the law, it is *appropriate* punishment. *United States v. Olhovsky*, 562 F.3d 530, 546-53 (3d Cir. 2009)(emphasis in original). Jolene Edwards and her family have already suffered punishment: she lost her job and career of 18 years at the Jersey Shore State Bank; she lost her job at her children's school when the charges in this case became public; she was barred from being a room parent in her children's classes; she has endured a significant reduction in family income yet remarkably has never made an untimely loan or revolving credit payment. And the stigma of a felony conviction will be with Jolene Edwards for the

8

rest of her life. Incarceration is unnecessary to promote respect for the law or just punishment.

Concerning affording adequate deterrence to criminal conduct and protecting the public from further crimes of the defendant, Jolene Edwards was found guilty of committing an offense which was committed six years ago. In light of her heretofore law-abiding life, she is very unlikely to re-offend, and poses no danger to the public. Given her character and background, the public is not at risk.

A term of incarceration beyond that required to satisfy 18 U.S.C. § 3561(a)(1) is not necessary to provide Jolene Edwards with educational or vocational training, medical care, or other correction treatment.

With respect to the kinds of sentences available, Jolene Edwards is not eligible for straight probation; however, this Honorable Court may fashion a sentence requiring one hour or one day in Marshal's custody, followed by supervised release to satisfy the statute making probation unavailable. Supervised release is punishment. Defendants are subject to several standard conditions that substantially restrict their liberty. They may not leave the judicial district, move, or change jobs without notifying, and in some cases receiving permission from, their probation officer or the court. They must report regularly to their probation officer, permit unannounced visits to their homes and fill out monthly reports. The current advisory guideline

range and the proposed policy statement slated for passage by Congress support a sentence of one hour or one day in the Marshal's keep.

Finally, under all the circumstances of this case, the sentence requested would not be a disparate one for a first-time offender such as Jolene Edwards.

## Conclusion

For all the foregoing reasons, a sentence of one hour in the United States Marshal's keep is sufficient, but not greater than necessary, to comply with the statutory directives set forth in 18 U.S.C. 3553(a).  See also 28 U.S.C. § 994(j) (concerning general appropriateness of imposing a non-custodial sentence in non-violent first offender cases).

                              Respectfully submitted,

Date:  June 25, 2018         s/ D. Toni Byrd
                                    D. TONI BYRD, ESQUIRE
                                    Asst. Federal Public Defender
                                    Attorney I.D. # PA46557
                                    330 Pine Street, Suite 302
                                    Williamsport, PA  17701
                                    (570)323-9314
                                    FAX: (570)323-9836
                                    Email: Toni_Byrd@fd.org
                                    Attorney for Jolene Edwards

# **CERTIFICATE OF SERVICE**

I, D. Toni Byrd, Assistant Federal Public Defender, do hereby certify that this document, the foregoing **Jolene Edwards' Sentencing Memorandum in Support of a Sentence of One Day,** filed electronically through the ECF system, will be sent to the registered Participants as identified on the Notice of Electronic Filing, including the following:

>George J. Rocktashel, Esquire
>Assistant United States Attorney

and by placing the same in the United States mail, first class, postage prepaid, at Scranton, Pennsylvania, addressed to the following:

>Jolene Marie Edwards

Date: June 25, 2018                           s/ D. Toni Byrd
                                           **D. Toni Byrd**
                                           **Assistant Federal Public Defender**